Date signed July 31, 2009



**ROBERT A. GORDON**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | Case No.    08-16398-RAG |
| | * | Chapter    11 |
| PRIS-MM, LLC. | * | |
| | * | |
| Debtor | * | |

## <u>MEMORANDUM OPINION</u>

**I.    <u>Introduction</u>**

Before the Court for consideration are the Revised Motion for Allowance and Payment of

Priority Administrative Claim for Compensation and Expenses Incurred by Raymond J. Peroutka,

Jr./Invotex, Inc., as State Court Receiver of Pris-mm, LLC for the Period Covering April 28, 2008

through July 31, 2008 (Peroutka Motion) and the Revised Motion for Allowance and Payment of

Priority Administrative Claim for Compensation and Expenses Incurred by Niles, Barton &

Wilmer, LLP, as Counsel for State Court Receiver of Pris-mm, LLC for the Period Covering April

2, 2008 through July 31, 2008 (NBW Motion) (collectively referred to as the Revised Motions)

(Dkt. Nos. 138 & 139) filed on December 12, 2008. The Debtor filed Oppositions to each and they will be referred to collectively as the Oppositions (Dkt. Nos. 156 & 157).[1] The Peroutka Motion seeks total compensation of $44,223 for professional fees and $118.76 in expenses for the work performed as the state court appointed receiver of Pris-mm, LLC (Debtor)[2] pursuant to 11 U.S.C. §§ 503(b)(3)(E) and 543(b)(2) and Fed. R. Bankr. P. 6002(b) and 2016(a).[3] The NBW Motion seeks compensation of $50,616.50 for professional fees and $2,208.84 in expense for legal services provided to the Receiver pursuant to Sections 503(b)(4) and 543(b)(2) and Rules 6002(b) and 2016(a).[4]

---

[1] The Oppositions are respectively entitled Debtor's Response in Opposition to Revised Motion of Raymond J. Peroutka, Jr., and Invotex, Inc., for Allowance and Payment of Priority Administrative Claim and Debtor's Response in Opposition to Revised Motion of Niles, Barton & Wilmer, LLP, for Allowance and Payment of Priority Administrative Claim. Hereafter, Mr. Peroutka shall be referred to as the Receiver and Niles, Barton & Wilmer, LLP shall be referred to as NBW. On September 9, 2008, the Receiver filed proof of claim number 14 and contemporaneously therewith, a Motion for Allowance and Payment of Priority Administrative Claim for Compensation and Expenses Incurred by Raymond J. Peroutka, Jr.,/Invotex, Inc., as State Court Receiver of Pris-mm, LLC for the Period Covering April 28, 2008 through July 31, 2008 (First Motion) (Dkt. No. 85). The Debtor filed an opposition (Dkt. No. 94) to the First Motion and the matter was set in for hearing on December 1, 2008. After brief argument, the Court continued the hearing to January 28, 2009 to allow the Receiver an opportunity to amend his papers and to permit the filing of separate motions by the Receiver and NBW. The Revised Motions were then filed and the Debtor timely filed the Oppositions thereto. The Court heard argument on the Revised Motions and Oppositions at the January 28, 2009 hearing.

[2] The Receiver's compensation request is divided into $31,101.50 for pre-petition fees and $85.60 for related expenses and $13,121.50 for post-petition fees and $33.16 for related expenses.

[3] Hereafter, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code, unless otherwise noted. All references to Rules are to the Federal Rules of Bankruptcy Procedure. F.R. Bankr. P. 1001 *et seq.*

[4] NBW's compensation request is divided into $16,445.00 for pre-petition fees and $23.20 for related expenses and $34,171.50 for post-petition fees and $2,185.64 for related expenses.

## II.   Factual Background

Debtor is generally involved in the management of five franchise restaurants.  One is operated directly by the Debtor and each one of the other four is operated by a separate wholly owned subsidiary of the Debtor. On January 12, 2006, Stellar Investments, LLC (Stellar) filed a complaint in the Circuit Court of Maryland for Baltimore County against the Debtor[5] and on December 4, 2006, a Consent Judgment was entered against the Debtor and in favor of Stellar in the amount of $700,000.00.  At the request of Stellar to aid in the enforcement of the judgment, the Circuit Court for Baltimore County issued an order appointing the Receiver as such, along with his company Invotex, Inc., on April 28, 2008.[6]  During the ten days that followed, it appears undisputed that the Receiver did assume the mantle of control with respect to the Debtor and took some steps to follow through on that role.  On May 8, 2008 (Petition Date), however, the Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

On May 12, 2008 the Receiver filed a Motion to Dismiss Bankruptcy Petition (Dismissal Motion) (Dkt. No. 15) and on May 22, 2008, Stellar filed a joinder and supplement to the Dismissal Motion (Dkt. No. 25).  The Debtor filed oppositions (Dkt. No. 29 and 30 respectively) and a hearing was held on June 10, 2008.  At the hearing, the Dismissal Motion was withdrawn on the record.

On June 17, 2008 Stellar filed a Motion to Dismiss Bankruptcy Petition or in the Alternative, Motion for Appointment of a Chapter 11 Trustee (Motion to Dismiss) (Dkt. No. 44).

---

[5] Stellar's cause of action was for a breach of promissory note.  Stellar Investments, LLC v. Pris-mm, LLC (Case No. 03-C-06-000375).

[6] The Order Appointing Receiver was issued following an evidentiary Show Cause hearing held on November 1 and November 13, 2007. (Peroutka Aff. ¶ 2).

The Motion to Dismiss was subsequently withdrawn on December 4, 2008.  Ultimately, Stellar's claim against the Debtor was assigned to a third party and with that, it abruptly discontinued its involvement in this case.

A hearing on the Revised Motions and Oppositions was held on January 28, 2009.  Debtor argued that the Receiver's actions resulted in no demonstrable benefit to the Debtor's bankruptcy estate and therefore no compensation should be allowed to either movant for the pre-petition period. Debtor likewise argued that the Receiver's post-petition activities were focused almost exclusively upon resisting the bankruptcy byway of seeking dismissal of the case, and therefore were not compensable pursuant to settled law.  In rebuttal, the Receiver claimed that his pre-petition activities included diligent efforts to identify, preserve and safeguard the assets of the Debtor's estate.  As for the post-petition period, the Receiver argued that his efforts were all in accordance with the best interests of creditors.  In other words, it was asserted that either dismissal or the appointment of a trustee was in the creditors' best interest in light of the knowledge he obtained while in control of the Debtor's business during the ever so brief pre-petition period that he held that distinction.[7]  These discrete issues have been fully briefed and argued and are now ready for decision.

---

[7] No testimony was given for or against either position, the parties choosing to rely entirely upon their papers.  Following the January 28, 2009 hearing, and per the Court's request, the Receiver and NBW filed affidavits in support of their respective motions (Affidavits) (Dkt. Nos. 174 & 175).  Both the Debtor and the United States Trustee filed responses in opposition to the Affidavits (Dkt. Nos. 178 & 193 respectively).The Receiver was given an express opportunity to  testify at the January 28, 2009 hearing but declined. At a later hearing on March 31, 2009 after this matter had been taken under advisement, the Receiver requested the opportunity to 'make a statement' to the Court regarding what he perceived to be the personal nature of the Debtor's written remarks. The Debtor objected and, in light of the circumstances, no oral statement was permitted.

### III.    Analysis

####    *a.    General Principles*

Section 543(a) of the Code provides that the commencement of a bankruptcy case supersedes a receiver's appointment and prohibits the receiver from continuing to work in that capacity.  Nevertheless, in the Court's discretion the operation of subsection (a) may be suspended and a range of permissible conduct carved-out post-petition for the Receiver pursuant to Section 543(d) if to do so would be in the best interest of creditors.[8]  In the absence of an order under Section 543(d), Section 543(b) requires the receiver to immediately turn over to the trustee all estate property and account for any (including any proceeds or products) that came into her possession. As of the entry of this Memorandum Opinion, the Receiver has neither filed an accounting of property nor sought authorization to continue in any capacity post-petition.

----

[8] Sections 543(a) and (d) provide in relevant part:

> (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody or control of such custodian except such action as is necessary to preserve such property.
>
>                    *        *        *
>
> (d) After notice and hearing, the bankruptcy court —
> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitted a custodian to continue in possession, custody, or control of such property...

Section 543(c)(2) permits the award of reasonable compensation "for services rendered and costs and expenses incurred" by receiver. Compensation awarded may then be elevated to administrative expense status under Section 503(b)(3)(E), which provides, in pertinent part:

> After notice and a hearing, there shall be allowed administrative expenses...including...(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by – (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian... [9]

11 U.S.C. § 503(b)(3)(E). Paralleling the foregoing, Section 503(b)(4) likewise provides that the receiver's attorneys and accountants may be allowed an administrative expense for reasonable compensation in light of their services to the estate. 11 U.S.C. § 503(b)(4).

Case precedent regarding the award of estate funds to compensate a superseded receiver dates back to the United States Supreme Court's decision in *Randolph v. Scruggs*, 190 U.S. 533 (1903). In that decision, Justice Holmes opined that compensation was only appropriate "so far as his services, or services procured by him, tend to the preservation or benefit of the estate." *Id.* at 538. It is within that context that the Court examines the requests of the Receiver and NBW in the case at bar.

---

[9] A receiver appointed in a state court proceeding is a "custodian" within the meaning of 11 U.S.C. § 101(11)(A). *In re 245 Assoc., LLC*, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995). Section 101(11)(A) defines the term custodian as "receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title...".

**b.       Pre-Petition Fees & Expenses**

For the ten-day period that elapsed between the Receiver's appointment and the Petition Date, the Receiver seeks $31,101.50 in compensation for services rendered and $85.60 for expenses incurred.  For the same period, NBW seeks $16,445.00 in fees and $23.20 for expenses incurred.

The Receiver relies upon *In re First Security Mortgage Co., Inc.*, 117 B.R. 1001 (Bankr. N.D. Okl. 1990) and makes the creative suggestion  that the benefit and reasonableness of his actions  should be judged  in a prospective fashion; i.e. that if a potential future benefit to the estate can reasonably be assumed, whether realized or not, then the fees incurred toward that effort should be allowed as a priority administrative expense payable by the estate.

The *First Security* case is readily distinguishable from the circumstances presented herein. *First Security* involved an employment agency that found and supplied a 'loan closer' as an employee pursuant to a pre-petition agreement with the Debtor.  117 B.R. at 1002-03.  The Debtor hired the employee post-petition but its business operations ceased within five months of the bankruptcy filing.  *Id.*  Thereafter, the employment agency sought payment in full of its finder's fee as an administrative priority notwithstanding the fact that it was calculated upon a full year's salary. *Id.* at 1003-04.  The Court awarded the full amount deciding, *inter alia*, that the creditor had fully performed its contractual obligation and therefore should not suffer the risk of loss of dealing with a debtor in bankruptcy.  *Id.* at 1008.

Contrary to the facts of *First Security*, in this case there was no pre-petition agreement between the parties and the Receiver is not a trade creditor who provided a valuable, tangible service to the Debtor at an agreed upon price.  Viewed in that light, the *First Security* case simply

7

reflects the enforcement of an assumed contract without much inquiry as to the overall tangible benefit, if any, to the estate.  By contrast, and as is made clear by the statutory provisions and relevant case law that govern this situation, the Receiver's permissible compensation is to be judged strictly and will only be permitted when a concrete benefit to the estate is realized.

Moreover, the dynamic of a receiver versus a debtor-in-possession is of a completely different nature than the one that unfolds between a debtor and its creditors.  The distinction in this case is a much more fundamental one that goes to the question of who controls the estate.  Plainly, and barring any unique circumstances, the bankruptcy filing takes precedence over the receivership, completely undercutting a receiver's raison d'être.  Hence, the law dictates that a receiver's rights must yield to the bankruptcy case and any compensation requests are to be judged against that background.  In other words, the proper focus must fall almost exclusively upon whether the Receiver preserved or protected estate property for the benefit of the superior proceeding.

The Receiver suggests that it is "not necessary [for an award of fees] that the Receiver's actions contributed to a substantial benefit to the estate," but instead that the Court should rule in his favor because his activities could reasonably have been *thought* to be beneficial to the estate at the time they were performed. (Peroutka Motion ¶ 25).  *Randolph v. Scruggs*, *supra*, makes it clear that the Receiver's formulation is not an acceptable criteria.  A genuine benefit to the estate must be established.  However, the real problem here is that the Receiver has not provided any detailed information or analysis with respect to the work for which he expects to receive compensation and what, if any, benefit to the estate was received.  For example, at Paragraph 7 of Mr. Peroutka's affidavit, he makes the conclusory claim that he, "identified, preserved and protected the Debtor's

business assets, which were all surrendered to and which benefited the Debtor's bankruptcy estate, and which benefited from the Receiver's actions." That may well be the case but if it is, his time records, submitted in support of the Peroutka Motion, do not support such a claim. Instead, they only include the barest hint of information as to whether a benefit to the bankruptcy estate resulted from his pre-petition efforts.

It appears that Mr. Peroutka visited the Debtor's offices regularly during his time in charge and spent a fair amount of effort gaining control of the Debtor's finances. However, the rest of his time appears to be devoted to either gathering information, planning and prioritizing his activities, or, engaging in other endeavors that do not readily explain themselves simply by looking at the timesheets. In other words, only a tiny percentage of the sums claimed can be connected to the preservation of the estate based upon the evidence submitted. Even if one were to agree with the Receiver's claim that his conduct should be judged prospectively, at a minimum there must be a showing that a foundation was built on activity reasonably geared to benefit and preserve of the estate. Beyond the slight entries in the timesheets that arguably might fall into that category, the Receiver has offered nothing more than conclusory statements and speculative argument. No detailed, concrete discussion of any of the Receiver's actions has been provided. The Court concludes that this is so because the activities in question cannot be molded to fit the requisite pigeon hole; i.e., that they produced a genuine benefit to the estate. The correct result would therefore seem to be obvious.

When professionals duly appointed to serve the estate during the course of a bankruptcy seek fees, the compensation prayed for is always subject to strict scrutiny. Generally, the same

standard is applied to such fee requests; i.e., whether the estate received a benefit as a result of the work performed.[10]  Surely, compensation sought by a receiver appointed by the state court, who's service is limited to the pre-petition period, must withstand no less scrutiny.  This Court reads *Randolph v. Scruggs*, 190 U.S. 533 (1903) as requiring at least that much of a showing.

Notwithstanding the dearth of specificity in the Receiver's papers, the Court finds that his activities in assuming control of the Debtor's operations did render a small, brief benefit to the estate prior to the Petition Date.  At a minimum, the Receiver's actions must have provided a modicum of management and control.  Accordingly, the Court will approve a modest fee of $7,500 for those activities as a priority administrative expense pursuant to Section 503 (b)(3).

As for the NBW Motion, it merely parrots the Receiver's and therefore is equally suspect. On close examination, its deficiencies are even more glaring.  The NBW Motion adds nothing to establish that the law firm did anything of substance during the ten-day period that can be interpreted as conferring a benefit upon the estate.   It appears that all of the law firm's work was either directed towards solidifying the Receivership proceeding itself, planning to defend against the ultimate bankruptcy filing or rendering miscellaneous advice to the Receiver on a variety of issues related to his duties.  It bears repeating here that like the Receiver's Motion, no detailed explanation regarding services rendered and any resulting benefit to the estate has ever been provided by NBW. The time records are all the Court has to go on.  Accordingly, no fees or costs will be awarded NBW for the pre-petition period.

---

[10] The relevant standard is boiled down to a crisp shorthand here.

### c.      Post-Petition Fees & Expenses

The Receiver did not seek approval under Section 543(b) to continue post-petition in his

appointed capacity.  In order for his services to be compensable by the estate pursuant to Sections

543(c)(2), 503(b)(3)(E), and 503(b)(4), they must be related to the fulfillment of  his responsibilities

under § 543.  *In the Matter of North Port Development Co.,* 36 B.R. 19 (Bankr. E.D. Mo. 1983).

However, none of the services listed appear to be related to any of the identified statutory duties.

No accounting of estate property was ever filed with the Court as required by Section 543(b)(1) nor

do the Revised Motions and supporting time records  reflect any act in connection with either the

accounting for, or turnover of, estate assets. *In re Posadas Associates*, 127 B.R. 278, 281 (Bankr. D.

N.M. 1991) ("Where the custodian did not turn anything over to the trustee or the debtor-in-

possession, the custodian is not entitled to compensation from the bankruptcy estate under §

503(b)(3)(E)").[11]

Furthermore, a receiver's compensation will be awarded administrative priority status

pursuant to Section 503 (b)(3)(E) for only those post-petition services that resulted in some benefit

to the estate.  *Randolph v. Scruggs,* 190 U.S. 533, 538 (1903); *In re Lake Region Operating Corp.*,

238 B.R. 99, 102 (Bankr. M.D. Pa. 1999). It is well-settled that efforts expended in resisting a

bankruptcy are not entitled to compensation from the debtor's estate.  *Lake Region*, 238 B.R. at 102;

---

[11] The court in *In re Posadas Associates*, 127 B.R. 278 (Bankr. D. N.M. 1991) discussed post-petition compensation of a receiver and her counsel as follows:

> Within §§ 503 and 543 is the recognition that a custodian will incur costs in the process of turnover and that these costs are to be accorded administrative expense treatment and therefore paid first without need for prior court approval [citations omitted]…However, where the custodian incurs costs not for complying with the turnover provisions of the Code but for resisting turnover, the Court finds that prior court approval is necessary in order for the fees and costs to be considered for administrative expense priority.

*Randolph*, 190 U.S. at 539; *In re Kenval Marketing Corp.*, 84 B.R. 32, 26 (Bankr. E.D. Pa. 1988);

*In re Posadas Assocs.,* 127 B.R. 278, 281 (Bankr. D. N.M 1991).

The Receiver seeks total compensation of $13,154.66 for post-petition services rendered.

Likewise, NBW seeks total post-petition compensation of $36,357.14.  Most, if not all, of these fees

resulted from the Receiver's aggressive  efforts  to have the Debtor's bankruptcy case dismissed and

the receivership reinstated. Although the Receiver contends that dismissal was in the  best interests

of creditors  (Peroutka Motion ¶ 11), it has been established by the case law that in this context the

risk of loss  lies with the receiver. *Scruggs***,** 190 U.S. at 539 (noting that the Court would not go

further than allowing compensation  for services which were beneficial to the estate and placed the

risk of disallowance for any other fees on the superseded custodian "as he was chargeable with

knowledge of what might happen"); *Lake Region*, 238 B.R. at 102 ("Since efforts expended in

fighting the involuntary petition cannot be said to benefit the creditors, the risk of not prevailing

must be on the receiver."). The simple principle underlying this rule is that in the absence of proven

bad faith on the Debtor's part, it is generally more beneficial to creditors for a financially strapped

Debtor to be in bankruptcy as opposed to a drastically more limited state court insolvency

proceeding.[12]

The record is barren of evidence that the Receiver engaged in any post-petition activity that

could be considered beneficial to the estate.  The Receiver avers that he "identified, preserved and

protected the Debtor's business assets, which were all surrendered to and which benefitted the

Debtor's bankruptcy estate, which benefitted from the Receiver's actions." (Peroutka Aff. ¶ 7).

---

[12]  In this context bad faith generally means both objective and subjective futility.  *See Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir. 1989).

12

However, there is no evidence of any *specific* post-petition acts regarding the preservation or turnover of estate assets. Therefore, no compensation will be awarded to the Receiver for the post-petition period.

As for NBW, everything it did during the post-petition period was focused upon getting the case dismissed. Fees shall not be allowed for what the law expressly prohibits. Accordingly, no post-petition compensation shall be allowed NBW.

**IV.   Conclusion**

Fees in the amount of $7,500 shall be awarded to the Receiver for his pre-petition preservation of the Debtor's business.[13] No fees will be allowed NBW for the pre-petition period nor will any post-petition fees be awarded to either the Receiver or NBW. An appropriate Order memorializing these rulings shall issue.

cc:     Andrew M. Croll, Esq.
        Robert B. Scarlett, Esq.
        *Counsel for Debtor*
        Scarlett and Croll, P.A.
        201 N. Charles St.
        Suite 600
        Baltimore, MD 21201

        David D. Gilliss, Esq.
        Craig D. Roswell, Esq.
        *Counsel for Receiver Raymond J. Peroutka Jr.*
        Niles, Barton & Wilmer, LLP
        111 S. Calvert Street, Suite 1400
        Baltimore, MD 21202

---

[13] On June 23, 2009, well after the matter had been taken under advisement, Capital Produce, Inc. d/b/a Capital Seaboard (Capital Seaboard), an alleged creditor without due notice of this case, filed a limited objection to the Revised Motions (Dkt. No. 249) seeking to have the Revised Motions denied to the extent they sought recovery from funds allegedly impressed with the so-called PACA trust. In light of Capital Seaboard's alleged priority claim to estate funds, the payment of the sum awarded herein will be stayed pending further developments.

Nathan D. Adler, Esquire
Diane C. Bristow, Esquire
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South St., 27th Floor
Baltimore, MD 21202-3282

James T. Heidelbach, Esquire
Gebhardt and Smith, LLP
One South St., Ste. 2200
Baltimore, MD 21202

Louis J. Rizzo, Jr., Esquire
Reger Rizzo & Darnall LLP
111 S. Calvert St., Ste. 2350
Baltimore, MD 21202

Michael J. Klima, Jr., Esquire
8600 LaSalle Rd., Ste. 200
Towson, MD 21286-2025

Robert R. Bowie, Esquire
Jason C. Brino, Esquire
Michael W. Siri, Esquire
Bowie & Jensen, LLC
29 W. Susquehanna Ave., Ste. 600
Towson, MD 21204

Douglas B. Riley, Esquire
Logan Yumkas, LLC
2530 Riva Rd,. Ste. 400
Annapolis, MD 21401

Alan F.M. Garten, Esquire
Fedder and Garten, P.A.
36 S. Charles St., Ste. 2300
Baltimore, MD 21201

Kenneth F. Davies, Esquire
Wright, Constable & Skeen, LLP
100 N. Charles St., 16th Fl.
Baltimore, MD 21201

Peter J. Duhig, Esquire
Buchanan, Ingersoll & Rooney
1000 West St., Ste. 1410
Wilmington, DE 19801


Office of the U.S. Trustee
Garmatz Federal Courthouse
101 W. Lombard St., Ste. 2625
Baltimore, MD 21201

Paul M. Rose
1107 Janice Ct.
Joppa, MD 21085

State of Maryland
Dept. of Labor, Licensing & Regulation
Office of Unemployment Insurance Contributions Division
Litigation and Prosecution Unit
1100 N. Eutaw St., Rm. 401
Baltimore, MD 21201

American Express Bank FSB
c/o Becket and Lee LLP
P.O. Box 3001
Malvern, PA 19355-0701

Jon Lambiras, Esquire
Berger & Montague, P.C.
1622 Locust St.
Philadelphia, PA 19103

Rosen, Sapperstein & Friedlander, Chtd.
300 Red Brook Blvd., Ste. 200
Owings Mills, MD 21117

**End of Opinion**